619 A.2d 713

**Alda BEENER,**

v.

**George R. BEENER, Executor of the Estate of Edward Beener, Appellant.**

Superior Court of Pennsylvania.

Argued June 16, 1992.

Filed Dec. 2, 1992.

Reargument Denied Feb. 8, 1993.

Thomas R. Eddy, Pittsburgh, for George Beener.

Daniel W. Rullo, Somerset, for Alda Beener.

Before WIEAND, DEL SOLE and HESTER, JJ.

HESTER, Judge:

This is an appeal and cross appeal from a final decree in equitable distribution entered October 18, 1991. Alda Beener instituted this action against her now deceased husband, Edward, by filing a complaint in divorce on August 5, 1981.

George Beener, as executor of the estate of his deceased father, Edward, appealed from the decree, and Alda filed a cross appeal. We conclude that the issue raised by George regarding equalization of royalty payments is meritless, and we affirm the trial court's decision in that regard. However, we conclude that both issues raised in Alda's cross appeal are meritorious. Since the trial court erred in altering the amount payable to Alda for stock that was stipulated to have been marital property, we reinstate the master's award as to the payment to be made to Alda for her interest in the stock. We also reverse the trial court's determination that Alda is not entitled to a return on her interest in certain equipment that was in the sole possession of Edward and his successor in interest, George, following the parties' separation. We reverse with directions that the trial court determine a fair return for Alda's interest in the equipment for the period of time that she was out of possession of the equipment, as outlined in this decision.

The facts relevant to this appeal are as follows. During the early period of their marriage, Alda and Edward worked together in farming, lumbering, and constructing a residence between Rockwood, Maryland, and New Centerville, Pennsylvania. Subsequently, they commenced a coal mining business in the name of Beener Coal Company ("Beener"). During the operation of these various business enterprises, the parties acquired, prior to separation, numerous parcels of real estate and various pieces of farming and coal mining equipment.

After the divorce complaint was filed, both parties filed affidavits of consent, and a final decree in divorce was entered September 24, 1984. Edward died in 1988. The ensuing years were consumed with litigation regarding equitable distribution, which was complicated due to the parties' significant assets and Edward's partial ownership of Beener. It also was delayed pending the outcome of two separate civil actions. Alda owned no shares of Beener, which was owned by Edward and the parties' six children. Each of the seven shareholders owned forty shares of stock. Ownership of the stock was the subject of the first independent civil action, which was institut-

ed against Edward and three of the parties' children. The plaintiffs in that action were the parties' other three children, who invoked their minority shareholder rights against the defendants. In that case, the trial court determined that Edward, in collusion with the three children siding with him in the divorce, had usurped corporate opportunities from Beener by setting up independent companies which were owned solely by Edward and the three children who sided with him in the divorce. The court in that action ordered the defendants to purchase the stock of the three plaintiffs and then placed a value on the stock.

Also relevant to our disposition of this appeal are two contracts entered by Alda and Edward with Beener in 1974. One was a machine rental agreement and the other a coal lease extraction royalty agreement. Both agreements were entered prior to separation. One required Beener to pay rent to Alda and Edward for coal mining equipment owned by them and leased to Beener. The other required Beener to pay royalties to Alda and Edward for coal extracted from real property owned by them and which had been leased by them to the corporation.

Under the coal royalty agreement with Beener, royalties were paid until 1978 to Edward and deposited in a joint bank account owned by both Alda and Edward. In 1978, Alda requested, and Edward agreed, that the royalty checks be issued separately. Thenceforth, one-half of the royalties was paid directly to Alda and one-half to Edward. From 1978 to 1988, Alda and Edward each earned royalties of $2,409,208.66. Even though Edward, together with the three children who sided with him over operation of Beener, retained control over Beener, Beener paid Edward only $915,606.74 of those royalties.

After this divorce action was instituted, Beener ceased paying Alda the full amount of the royalties required under the terms of the royalty agreement. Alda then successfully instituted a separate civil action against Beener to force it to pay the deficit royalty payments to her. She eventually

received from Beener $2,139,892.11 of the 1978–88 royalties due her.

A separate civil suit as to the mining equipment that was in Alda and Edward's name also was instituted. The agreement between Beener, as lessee, and Alda and Edward, as owners of the equipment, provided that Beener could change the rent payable at any time. After the divorce action was instituted, Edward, through his and his children's control over Beener, unilaterally stopped the corporation's rental payments. In the civil action, the trial court determined that the cessation of rental was valid under the agreement since that agreement did give Beener the right to set rental. The court specifically noted, however, that the action being determined by it was not a suit by Alda against Edward for violation of or damage to her interests in the equipment as between them.

In the present action, a master was appointed to hear equitable distribution matters on February 17, 1989, and numerous hearings were scheduled throughout the spring and summer of 1989. Neither party had filed an inventory, but they had agreed that any asset owned by either party, including the forty shares of Beener owned by Edward, was to be considered a marital asset and divided by fifty percent. By the time of the hearings, they had narrowed the assets to be valued to twelve. The master was to decide the value of each asset.

We first discuss the proceedings which relate to the royalty equalization argument, which is raised by George in his appeal. During the hearings, no one discussed the coal royalty payments, and George did not present any evidence about the royalty payments received by Alda. Further, George did not claim before the master that post-separation royalty payments received by Alda either were marital assets or that they were subject to the agreement to divide all assets in half. The issue of the unequal royalty payments was raised only in the exceptions filed to the master's report. In those exceptions, George asserted that all royalty payments received by Alda were marital property and that Alda owed George one-half of

the royalty payments which she received from 1978 to the date of the hearings.

The trial court denied this exception for two reasons. First, it concluded that the issue was not preserved properly. The court observed that at the first master's hearing held on May 22, 1989, the parties had agreed that the master was to value twelve items. The royalty payments received by Alda were not included in those twelve. The trial court determined that George was not permitted to raise the issue after all hearings had been held and after the master's report had been filed.

The trial court also concluded that the 1978–88 royalty payments received by Alda were not marital property and were not subject to the agreement to divide everything equally. The court held that the royalty agreement had been divided effectively by the parties in 1978 when they agreed to accept separate, equal checks from Beener for the coal royalties. The court observed that when Beener stopped paying Alda her royalties, she enforced the contract against the company, and that if Beener had failed to pay Edward as required by the royalty agreement, his remedy similarly would have been to institute a civil action to compel payment of his royalties. The court finally observed that Edward was in control of Beener and should have ensured payment of the royalties to himself. The trial court ruled that under the circumstances, George could not claim that Edward was entitled to one-half of the royalty payments received by Alda after 1978.

George now claims on appeal that he is entitled to an "equalization" of the royalty payments, as opposed to a full one-half of Alda's royalties, which was his original claim to the trial court. George asks for one-half of the *excess* royalty payments received by Alda. However, we concur with the trial court's resolution of this matter.

The issue of "equalization" of royalty payments never was presented to or considered by the master. Further, this equalization argument was not contained in the exceptions, where George asserted that all of the royalty payments re-

ceived after 1978 were marital property and subject to the agreement to divide such property evenly. Pa.R.C.P.1920. 55(a) provides that exceptions may be filed as to matters occurring during the hearings before the master and that any matter not included in exceptions is waived. *See also Blatz v. Blatz,* 412 Pa.Super. 449, 603 A.2d 666 (1992).

Before the master, George never made a claim that Alda's separate royalty receipts were involved in the equitable distribution proceeding. Further, in exceptions, George made a claim significantly different than the one now raised on appeal. In the proceedings below, the issues were confined solely to the designation of marital assets and their values. The parties stipulated that any marital property would be divided fifty-fifty. Eventually, the parties agreed that there were twelve items of marital property, and the master was to decide value only. In the exceptions, George for the first time claimed that the royalty payments received after 1978 were marital property and thus subject to the fifty-percent split.

■ However, we agree with the trial court's conclusion that Alda's payments were *not* marital property. They represented Alda's one-half of marital property which had been divided by the parties in 1978 when they divided the royalty payments and Beener began issuing a separate check to Alda for her one-half of the royalties. As Edward had control of Beener, he should have insured that he received the royalties due to him. He cannot now raise an "equalization" or "fairness" argument never presented at any stage in the proceedings below to obtain a portion of Alda's separate, post-separation property.

■ We now address the issues raised in Alda's cross appeal. Her first issue concerns the forty shares of Beener that were owned by Edward prior to their separation. The parties stipulated at the master's hearing that these forty shares of Beener were to be considered marital property. Initially, Alda asked the master to make an in-kind distribution of twenty shares of Beener to her. However, once the equity court in the minority shareholder's suit ordered the

majority shareholders to buy out the minority shareholders of Beener, Alda asked that she be awarded the fair market value of her twenty shares of stock in the equitable distribution proceedings. The master made the monetary award to Alda and set the value of her twenty shares at the value set by the court in the separate minority shareholder's suit.

The following findings of the equity court in the minority shareholder's suit are relevant. Approximately one month after Edward and Alda separated, Edward and the three children siding with him ousted the three children siding with Alda from the board of directors of Beener. The four then in control started usurping corporate opportunities and forming new corporations, while not giving shares of the new corporation to the three minority stockholders of Beener. In their equitable action, the three children who were minority shareholders successfully asserted that the four majority shareholders had engaged in self-dealing and violated their fiduciary duty. The equity court directed that each minority shareholder was entitled to the fair market value of their shares of stock. The court also determined the fair market value of the forty shares of stock as of one month after the parties separated at $431,259. The master herein awarded Alda one-half the value of forty shares of stock or $215,629.50.

George filed exceptions to this determination, requesting one of two things, either that the value be reduced or that instead of a monetary award, Alda be given the shares in kind. Instead of addressing George's contentions, the trial court treated this issue as one of dissipation of assets. It determined that since Edward was not the only individual involved in reducing the post-separation value of the stock, he could not be held responsible for all of it. The court then decided that since Edward was one of four defendants in the shareholder's suit, he was to be imputed only one-fourth of the dissipation in value of the forty shares of marital stock and that Alda, as owner of one-half those forty shares, should receive an award of half of one-fourth the value of the forty shares of stock as of the date of separation, or $53,907.38.

This was improper. As of the date of separation, Alda's twenty shares of stock, as determined by the equity court, had a value of $215,629.50. Due to the situation, Beener stock lessened significantly in value, while Edward remained owner of stock of the various corporations that he and his three children formed to usurp Beener's corporate opportunities. He, and his successor in interest, thus have retained the financial position that he enjoyed before the separation while Alda is to be given one-fourth of the value of her $215,629.50.

First, neither party requested the relief granted by the trial court. It also is illogical. Alda is entitled to be compensated for the separation value of her marital interest in the stock, and the trial court's award allows Edward's estate to benefit from his actions in eroding the value of the stock while he retained his own financial position through his ownership of stock in the other corporations. The trial court was free to place a different value on the stock as of the date of separation based on any evidence before it. However, it could not convert the question to be decided, which was the value of a marital asset stipulated to be subject to a fifty/fifty split, into a dissipation issue and *then* conclude that because Edward was able to collude with others to devalue Alda's interest in the stock while retaining his own financial position, he should benefit from collusion through a reduction in the amount dissipated by the number of persons involved in the collusion to dissipate. This result was incorrect both because it granted relief not requested by either party and because it failed to achieve economic justice between the parties, as required by the Divorce Code. The master's award as to the amount to be awarded to Alda for her interest in the Beener stock is reinstated.[1]

Alda's second issue also has merit. She claims that she was incorrectly denied rent on her one-half interest in the mining equipment used by Beener following the separation. In this regard, we observe that it is clear that the mining equipment owned by both parties has been utilized by Beener without

---

1. We note that the master retained the right to alter the value of the stock pending the appeal in the equity action.

any payment being made to Alda since 1981. Meanwhile, Beener was in the control of Edward and the children who sided with him in this dispute. The master awarded Alda both the value of the equipment as of the date of separation and rental in the amount that was being paid to Alda by Beener prior to its unilateral decision to stop paying rent.

The trial court eliminated all rental awarded by the master on two grounds. It first determined that it was error to award both the separation value of Alda's half of the equipment and rental since this amounted to a double recovery for Alda. It also concluded that since Beener was determined in the separate civil action to have had the legal right to terminate rental, this was binding on the issue of rental between Alda and Edward.

We disagree with both the master's and the trial court's approach to this issue. As to the trial court's analysis, we note the following. First, awarding one capital as well as reasonable return on capital during a period of non possession does *not* result in double recovery. If Edward had purchased Alda's share of the equipment on the date of separation, Alda would have had that money to invest and would have received a *return* on her investment over the past eleven years. The trial court's double recovery analysis therefore is misguided since in this case, Edward's use of Alda's capital investment in the equipment over the years without recompense resulted in the erosion of Alda's financial position by denying her compensation for her loss of the ability to invest that capital.

Second, the fact that Beener was allowed to reduce rent unilaterally does not resolve the dissipation issue vis-a-vis Edward and Alda. The law is clear that when one spouse is in sole possession of marital property, the party out of possession is entitled to compensation for his or her interest in the property. *See Trembach v. Trembach*, 419 Pa.Super. 80, 615 A.2d 33 (1992). In this case, the parties stipulated that Alda's interest in the equipment was fifty percent. She was awarded the value of that interest as of the date of separation. The record establishes that Edward was in sole constructive pos-

session of her interest in the equipment through his control over Beener. He never paid for the use of that interest.

However, we also cannot allow the master's decision to stand. The master awarded Alda both the separation value of the property as well as full rental value. This approach allows Alda to recover the full value of the equipment when newer and gives her the full benefit of the return on the investment in the equipment, but then it fails to take into account that the value of the capitol invested in the equipment has decreased because the equipment itself has depreciated. Thus, the master's award penalizes Edward and also fails to achieve economic justice between the parties.

Alda must be treated in one of two ways. First, the court could create a legal fiction that Edward purchased Alda's interest in the equipment on the date of separation and award her separation value of the equipment and a reasonable return on her capital during the period that she did not have use of the money represented by her interest in the equipment.

Alternatively, the trial court may treat Alda as having retained her interest in the equipment over the years and award rental value, as set forth in the *Trembach* decision, and date of distribution value of the equipment. If the trial court determines that Alda is entitled to the fair market rental value of the equipment, an adjustment must be made to the amount she is awarded for her interest in the equipment to reflect that the equipment has depreciated over the years. In either manner, economic justice between the parties is achieved, which is the goal of the Divorce Code.

In accordance with the foregoing, the trial court's determination that post-separation royalty payments received by Alda were her sole property is affirmed, the trial court's valuation of Alda's interest in the marital property consisting of shares of stock of Beener Coal Company is reversed and the master's award is reinstated, and this matter is remanded for a recalculation of the amount awarded to Alda for her interest in the mining equipment in accordance with the directions contained herein. Jurisdiction relinquished.